## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

|  |  |
|---|---|
| _____ :  | |
| ALEXANDER N. PREZIOSO : | |
| : | **Civil Action No. 14-3140 (SRC)** |
| Plaintiff, : | |
| : | |
| v. : | **OPINION** |
| : | |
| BAYER CORPORATION, MATRIX : | |
| ABSENCE MANAGEMENT, and BAYER : | |
| CORPORATION DISABILITY PLAN, : | |
| : | |
| Defendants. : | |
| _____ : | |

**CHESLER**, District Judge

　　This matter comes before the Court upon the filing by Defendant Bayer Corporation

("Bayer"), Defendant Matrix Absence Management ("Matrix"), and Defendant Bayer

Corporation Disability Plan (collectively "Defendants") of a motion for summary judgment

(Docket No. 71), pursuant to Federal Rule of Civil Procedure 56. Plaintiff Alexander N. Prezioso

("Plaintiff") has submitted a brief in opposition (Docket No. 74), and Defendants have submitted

a reply brief (Docket No. 91). The Court has reviewed the parties' submissions and proceeds to

rule without oral argument.  See Fed. R. Civ. P. 78(b).  For the reasons set forth below,

Defendants' motion will be granted and this Court will grant summary judgment on both the

claim for denial of benefits under Section 502(a)(1)(B of the Employment Retirement Investment

Savings Act ("ERISA") and for breach of fiduciary duty under ERISA § 502(a).

1

I.     **FACTUAL BACKGROUND**[1]

    a.  **Short-Term Disability ("STD") and Long-Term Disability ("LTD") Coverage under the Plan**

From August 1, 2008 to June 6, 2012, Plaintiff worked for Bayer as a U.S. Deputy Director of Medical Affairs. Def. SUMF ¶ 51. Bayer is a Plan Administrator of a medical disability plan (the "Plan") offered to its employees, including Plaintiff. Id. ¶ 1. The Plan provides Bayer with the discretion to interpret its terms and conditions, and Bayer delegated this authority to its claims administrator Matrix and its ERISA Review Committee (the "Committee"). Id. ¶¶ 2, 6. The Plan reserves the discretion to determine whether the employee claimant is disabled and/or "totally disabled," and where "conflicting medical opinions are presented, the company or its delegate reserve the right to determine which opinion or opinions more plausibly or credibly assess [the claimant's] functional capabilities." Docket No. 71-5 ("Plan Doc.") 130.

---

[1] The following factual background is based on assertions in Defendants' Statement of Facts Not in Dispute (Docket No. 71-44, "Def. SUMF") and Defendants' Supplemental Statement of Facts Not in Dispute (Docket No. 91-1, "Def. Supp. SUMF") pursuant to Local Civil Rule 56.1 that are admitted or uncontroverted in Plaintiff's Response to Defendants' Statement of Material Facts Not in Dispute (Docket No. 75, "Pl. SUMF").

    Under Local Rule 56.1(a), the non-movant opponent to a motion for summary judgment is required to furnish a responsive statement that "address[es] each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." Instead of indicating such agreement or disagreement with each of Defendants' proffered undisputed facts, Plaintiff's responsive statement largely consists of various arguments for why this Court should accord little weight to Defendants' facts. See, e.g., Pl. SUMF ¶ 22 ("Plaintiff wishes to highlight that all of the Defendants' post claim experts base their opinions on a suspect and flawed couple of documents. . . ").

    Plaintiff's failure to comply with Local Rule 56.1 provides this Court the discretion to assume that Plaintiff accepts the facts in Defendants' statement that it does not specifically dispute. See Glazewski v. Corzine, 2009 WL 5220168, at *1 (D.N.J. Dec. 31, 2009), aff'd, 385 F. App'x 83 (3d Cir. 2010). Nevertheless, this Court has endeavored, in deference to Plaintiff's *pro se* status, to examine the record to determine which facts are genuinely not in dispute.

The Plan includes STD benefits for disabilities lasting less than 26 weeks, as well as LTD benefits for disabilities lasting longer than 26 weeks. Plan Doc. 121, 126. The Plan defines disability as being "under the care of a physician whose specialty or experience is appropriate for your condition" and that, "based on objective medical evidence," results in the covered employee being "unable to do your job." Def. SUMF ¶ 3.

To receive long-term disability under the Plan, the claimant 1) "must be unable to perform the essential duties of [the claimant's] regular occupation; 2) must provide "objective medical evidence satisfactory to the company or its delegate in its sole discretion, to support [the claimant's] initial claim for, and continuing eligibility to receive, disability benefits"; and 3) must apply for disability benefits under the Social Security Act ("SSDI"). Plan Doc. 128, 130. After 18 months of receiving LTD benefits, the claimant may only continue to receive such benefits if she is "totally disabled," which the Plan defines as being "unable to work at any job for which you are or could become qualified by education, training, or experience." Plan Doc. 126.

The Plan authorizes Bayer to terminate LTD benefits for various reasons, including if the claimant does not "provide satisfactory objective medical evidence of [the] continuing disability," is no longer disabled, or is "no longer under the regular care of a physician whose specialty or experience is appropriate for [the claimaint's] condition." Plan Doc. 127.

**b. Plaintiff's Short-Term Disability Claim**

On June 6, 2012, Plaintiff stopped working and applied for STD benefits. Plaintiff's primary care physician, Dr. Orlandoni, diagnosed Plaintiff with fatigue, arthralgias (i.e. joint pain[2]), and elevated rheumatoid factor. Def. SUMF ¶ 18; Docket No. 71-6 – 71-39 (Claim File,

---

[2] "Arthralgia." Merriam-Webster Online Dictionary. 2018. http://www.merriam-webster.com (11 June 2018).

"CF") 260. A review by RN Bill Thomack on June 27, 2012 supported Dr. Orlandoni's

diagnosis. Def. SUMF ¶ 19; CF 250. On July 6, 2012, Matrix approved Plaintiff for STD

benefits for the period of June 6 to July 18, 2012. CF 245. After being granted STD benefits,

Plaintiff received treatment from the following medical professionals:

1) <u>Dr. Golombek (Rheumatologist)</u>: On July 18, Dr. Golombek noted that Plaintiff
   suffered from fatigue and myalgia (i.e. muscle pain[3]). Def. SUMF ¶ 21; CF 244. In
   his August 21 notes, Dr. Golombek noted that Plaintiff's elevated rheumatoid factor
   was not a "sign[] of rheumatoid arthritis," but instead reflected a viral infection of
   acute mononucleosis ("mono") caused by the Epstein-Barr virus. CF 341.

2) <u>Dr. Bouillon (Orthopedic Surgeon)</u>: On August 8, Dr. Bouillon noted that Plaintiff
   had paracervical tenderness, a positive Spurling test—indicating cervical nerve root
   impairment—and slight bicep weakness. Def. SUMF ¶ 23; CF 177. On October 1, Dr.
   Bouillon diagnosed Plaintiff with polyarthralgia and chronic fatigue. Def. SUMF ¶
   29.

3) <u>Dr. Orlandoni (PCP)</u>: On August 10, Dr. Orlandoni diagnosed Plaintiff with fatigue,
   cervical radiculopathy, and upper extremity weakness. In his notes, Dr. Orlandoni
   indicated that the cervical spine exam and neck exams were "normal." Def. SUMF ¶
   24. CF 181. In his September 26 notes, Dr. Orlandoni reported a normal cervical
   spine examination and bilateral upper extremity weakness. Def. SUMF ¶ 28.

4) <u>Physical Therapy</u>: In August 2012, Plaintiff underwent physical therapy for cervical
   radiculopathy (i.e. compressed nerve pain[4]). This injury appears related to a
   motorcycle accident Plaintiff sustained in 1997, which resulted in a total right hip
   replacement in 1999. Def. SUMF ¶¶ 14-15.

   **c. Plaintiff's Long-Term Disability Claim**

Subsequent to these medical visits, Matrix determined that it was "unlikely the EE

[employee] will be able to RTW [return to work] to perform sedentary duties as of LTD effective

date of 12/5/12." CF 2084. Matrix subsequently approved Plaintiff for LTD benefits, effective

---

[3] "Myalgia." Merriam-Webster Online Dictionary. 2018. http://www.merriam-webster.com (18 June 2018).
[4] "Radiculopathy" ("irritation of or injury to a nerve root (as from being compressed) that typically causes pain,
numbness, or weakness") Merriam-Webster Online Dictionary. 2018. http://www.merriam-webster.com (18 June
2018).

December 5, 2012. Def. SUMF ¶ 34. By letter dated February 8, 2013, Matrix denied Plaintiff's

LTD benefits, stating that "there is no objective medical evidence that supports ongoing

disability." CF 131-132.  During this time period, the following medical professionals opined on

Plaintiff's condition and his estimated return to work:

1) <u>Dr. Golombek</u>: stated that he only saw Plaintiff once, in August 2012. Def. SUMF ¶ 33.

2) <u>Dr. Bouillon</u>: opined that Plaintiff was permanently disabled, due to cervical radiculitis and cervical herniated disc, and that he could not estimate Plaintiff's return to work. CF 174.

3) <u>Dr. Orlandoni</u>: On November 19, 2012, Dr. Orlandoni diagnosed Plaintiff with an upper respiratory infection, and noted that he was a good candidate for permanent disability. In January, Dr. Orlandoni stated that Plaintiff was being treated for polymyalgia, convalescent Epstein-Barr Virus, cervical radiculopathy, left hand parasthesias and gout. He estimated that Plaintiff could not return to work until November 19, 2013. Def. SUMF ¶ 37; CF 325-326.

4) <u>Mr. Dul (Physical Therapist)</u>: On October 12, 2012, Plaintiff's physical therapist conducted a Physical Capacities Assessment ("PCA"), in which he determined that Plaintiff was capable of sedentary work. Def. SUMF ¶ 31.

5) <u>Dr. Colizza (Orthopedist)</u>: Dr. Colizza examined Plaintiff's hip during a December 2012 visit, and noted that 1) the hip replacement as "really quite unremarkable" (CF 508); 2) the hip prothesis was in "very satisfactory position (CF 2089) with metal ion testing indicating "really mild elevations" that were not "in the range where we tend to become more concerned"; and 3) that Plaintiff "seemed to think that his hip really was not much of an issue to him but that we were just covering the bases given his workup for fatigue." <u>Id</u>.

In July 2013, Plaintiff appealed his denial of LTD benefits, arguing that reexamination

was warranted based on the following medical restrictions: 1) "permanent residual damage, pain

and loss of function and range of motion to both hands," constant numbing and paresthesia, and

chronic fatigue resulting from the 1997 motorcycle accident; 2) cervical disk herniations; 3)

elevated levels of uric acid; 4) toxic heavy metals from the right hip prothesis; and 5) exacerbation of these conditions from the mono infection. CF 5-6.

In October 2013, orthopedic specialist Dr. Vega conducted an independent medical exam ("IME"). According to the report, Plaintiff indicated that his job was mainly sedentary. Def. SUMF ¶ 43. In the IME, Dr. Vega determined that Plaintiff's multiple medical conditions did not preclude sedentary work (CF 275-276), as Plaintiff's multiple subjective symptoms were not corroborated by objective diagnostic exams that indicated an inability to perform sedentary work. As such, Dr. Vega reported that Plaintiff was not disabled from February 1, 2013 onward. Def. SUMF ¶ 43. Plaintiff was awarded SSDI benefits in October 2013. During the examination for those benefits, disability examiner Dr. Park determined that "based on the medical evidence the claimant retains a RFC [residual functional capacity] for [] sedentary work." Def. ¶ 44; SUMF CF 2117.

In November 2013, the Committee notified Plaintiff that it was upholding the denial of LTD benefits, on the basis that Plaintiff had failed to provide objective medical evidence of his ongoing disability as required by the Plan. CF. 1

### d.  First LTD Remand Review

Plaintiff filed suit in May 2014, and in May 2015 he notified Defendants of certain items "missing from the administrative record." CF 3629. In a motion dated December 2015, Defendants conceded that the final benefit determination on appeal was based on an incomplete administrative record (Docket No. 28-1, 2), and accordingly Defendants sought voluntary remand. Def. SUMF ¶ 48. By Order dated January 21, 2016, this Court granted Defendants' voluntary request for remand and stayed the lawsuit pending the Committee's "completion of the evidentiary record and review of the full record." Docket No. 35, 1-2.

Following remand, Plaintiff did not submit additional medical evidence regarding the ongoing nature of his medical condition, but he did take issue with the Committee's characterization of his job requirements. Def. SUMF ¶ 50; CF 574-575 ("The Administrative Records reflects that Defendants over the course of time, downgraded my job description from light to medium with travel to sedentary, travel not mentioned, without providing any documentation . . ."). The Committee solicited three medical reviews to address Plaintiff's job requirements:

1)  <u>Occupational Demands Analysis ("ODA")</u>: this report, based on Plaintiff's former colleague Edio Zampaglione, opined that Plaintiff's position included a 20% travel requirement that is "domestic" and "very flexible." Def. SUMF ¶ 51; CF. 1633.

2)  <u>Dr. Kelly Agnew (Orthopedic Surgeon)</u>: Having reviewed the ODA, Dr. Kelly noted that Plaintiff's job duties were "basically sedentary" and that Plaintiff's medical condition did not preclude him from satisfying the 20% occupational travel requirement. Def. SUMF ¶ 52; CF 3655.

3)  <u>Horizon Health Care Consultants</u>: Horizon conducted an independent vocational review, based on Plaintiff's capacity for sedentary work as determined by orthopedic surgeon Dr. Vega and physical therapist Mr. Pul. Based on the Dictionary of Occupational Titles, Horizon determined that Plaintiff's occupation as Deputy Director of Medical Affairs qualified as 'sedentary.' Horizon further determined that Plaintiff was not "totally disabled" from performing <u>either</u> this sedentary job or any position for which Plaintiff is or could become qualified by virtue of his education, training, and experience. Def. SUMF ¶ 53.

Citing the above factors as well as the material added to the administrative record after the voluntary remand, the Committee upheld the denial of Plaintiff's LTD benefits in March 2016 (Def. SUMF ¶ 54), at which point Plaintiff filed a motion to compel production of additional material. By Order dated December 8, 2016, Magistrate Judge Cathy Waldor remanded the case once again, in order for Defendants to produce "travel and expense reports"—

such as time logs, expense accounts, airline records, etc—that Plaintiff could present on remand

as evidence of his position's vocational requirements. Docket No. 50, 4-5.

### e.  Second LTD Remand Review

Following the second remand, Plaintiff argued that the job duties were light to moderate

with travel. Def. SUMF ¶ 58. In support of this contention, Plaintiff submitted two reports:

1) <u>Sonya Mocarski (Vocational Rehabilitation Specialist)</u>: based on travel logs and
discussions with Plaintiff, Ms. Mocarski opined that Plaintiff's job required "light to
medium" duties and that "[a] degree of travel, even one day a week, would be
considered 'light' work and not sedentary." Def. SUMF ¶ 59; CF 1999.

2) <u>Dr. Arena (M.D.)</u>: based on a review of the medical records, Dr. Arena opined that
Plaintiff "has not been able to perform his job duties . . . from June 2012 through to
the present time." CF 1970.

To address these two medical evaluations, the Committee solicited two further medical

reviews:

1) <u>Dr. Agnew</u>: he opined that 1) Plaintiff was not precluded from a predominantly
sedentary job; 2) that the determination by Dr. Arena and Ms. Mocarski that
Plaintiff's job involved "light to medium" exertion was inconsistent with the record;
and 3) that even if one assumes that Plaintiff's job requirements are accurately
characterized in the ODA (noting a 20% travel requirement) and in Ms. Mocarski's
report, Plaintiff would still not be disabled from such position from February 1, 2013
to June 5, 2014. Def. SUMF ¶ 62; CF 5344-46.

2) <u>Dr. Thomas (Orthopedic Surgeon)</u>: he performed an independent physician review,
and determined: 1) Dr. Vega's IME hip exam and Dr. Colizza's checkup did not
indicate that Plaintiff was restricted by his right hip; 2) Dr. Golombek's treatment and
notes did not indicate that Plaintiff suffered from rheumatoid arthritis or other
objectively documented worsening to his right elbow, left wrist or cervical spine; 3)
Dr. Bouillon's notes indicate ion levels within a normal range; 4) Dr. Park's SSA
review and Dr. Vega's exam indicate normal range of motion in the elbow, wrist, and
lumbar spine; and 5) Plaintiff was capable of performing the job requirements—as
characterized by Ms. Mocarski and the updated ODA—from February 1, 2013
through June 5, 2014, at which date Plaintiff could work at any job for which he was
or could become qualified by education or training.

After Drs. Agnew and Thomas submitted their reports, Plaintiff submitted responses from Dr. Arena and Ms. Mocarski. Def. SUMF ¶ 65. By letter dated November 3, 2017, the Committee notified Plaintiff that, having considered the additional letters and evidence, it determined that Plaintiff was not disabled from performing his job and it therefore upheld the denial of the LTD benefits. Def. SUMF ¶ 66.

## II.     LEGAL STANDARD

### a.  Summary Judgment under Rule 56

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). As the moving party, Defendant bears the burden of showing the absence of any genuine issues of material fact. Celotex, 477 U.S. at 323. A fact is only 'material' if it will affect the outcome of the lawsuit, and a dispute of a material fact is only 'genuine' if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). At the summary judgment stage, "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the opposing party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party satisfies its burden under Rule 56, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Plaintiff may not merely "rest on speculation and conjecture in opposing a motion for summary judgment" (Fiorentini v. William Penn Sch. Dist., 665 F. App'x 229, 233 (3d Cir. 2016)), but instead must present "more than a scintilla of evidence showing

that there is a genuine issue for trial." Woloszyn v. Cty. of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). In deciding a motion for summary judgment, the court's role is to determine whether there is a genuine issue for trial, and not to "to weigh the evidence and determine the truth of the matter." Anderson, 477 U.S. at 249.

### b. Standard of Review for Denial of Benefits under ERISA

Under ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B), a participant in a benefits plan covered by ERISA may bring civil suits to "to recover benefits due to him under the terms of his plan." Federal courts examine such challenges under de novo review unless, as here, "the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 102 (1989). In such case, courts apply the more deferential standard of arbitrary and capricious. Miller v. Am. Airlines, Inc., 632 F.3d 837, 844 (3d Cir. 2011). In the Third Circuit, this standard is often referred to interchangeably as an abuse of discretion standard. See Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 526 n.2 (3d Cir. 2009) ("[A]t least in the ERISA context," the standards of arbitrary and capricious and abuse of discretion are "practically identical").

A court may generally only conduct its review by reference to the record as it existed before the plan administrator when it made the challenged decision. Johnson v. UMWA Health & Ret. Funds, 125 F. App'x 400, 405 (3d Cir. 2005); Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5 (3d Cir. 2004) ("[T]he record for arbitrary-and-capricious review of ERISA benefits denial is the record made before the plan administrator, and cannot be supplemented during litigation."). One exception, however, is that a court may "consider evidence of potential biases and conflicts of interest that is not found in the administrator's record." Howley v. Mellon Fin. Corp., 625 F.3d

788, 793 (3d Cir. 2010). Where conflicts of interest exist, the deferential arbitrary and capricious

standard still applies. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). The significance

of such conflict of interest "will depend upon the circumstances of the particular case" (Id. at

108) but is only important "where there is evidence that the benefits denial was motivated or

affected by the administrator's conflict." Id. at 120; see also Schwing, 562 F.3d at 525 ("[A]ny

conflict of interest [i]s one of several factors in considering whether the administrator or the

fiduciary abused its discretion.").

Under the arbitrary and capricious standard, courts should uphold the plan administrator's

determination to deny benefits unless it was "without reason, unsupported by substantial

evidence, or erroneous as a matter of law." DeLong v. Aetna Life Ins. Co., 232 F. App'x 190,

192 (3d Cir. 2007) (quoting Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir.1993)).

In its review, the court "is not free to substitute its judgment for that of the plan administrator or

fiduciary in determining eligibility for plan benefits." Id. at 184; Doroshow v. Hartford Life &

Accident Ins. Co., 574 F.3d 230, 234 (3d Cir. 2009). This narrow review "disallows a court from

substituting its own judgment for a rational decision made by the plan administrator." DeLong,

232 F. App'x at 192.

## III.   DISCUSSION

In their moving papers, Defendants argue that the administrative record and review

process, including the evidence supplemented by the two remand reviews, does not demonstrate

that the denial of Plaintiff's LTD benefits was arbitrary and capricious.  In particular, Defendants

argue that the record—including Plaintiff's treatment record, the orthopedic IME, the

occupational ODA, the physical therapy PCA, and the various independent vocational and

physician reviews—confirm that "Plaintiff was not precluded from performing his regular

occupation as of February 1, 2013 or any job for which he is or could become qualified, as of June 5, 2014." Docket No. 71-2, 6-7.

Plaintiff counters that the determination was arbitrary and capricious due to "structural and procedural irregularities," and because a "conflict of interest impacted Defendants [sic] decision." Docket No. 74, 4-5. Although not organized as such in his moving papers, Plaintiff's various arguments appear to group within four broad claims: 1) the denial of LTD benefits was based on a previously undisclosed version of the Plan; 2) Defendants improperly reclassified Plaintiff's job requirements from "light to medium" to "sedentary" during the LTD review; 3) Defendants and various reviewing physicians were improperly motivated by conflicts of interest; and 4) miscellaneous arguments indicate the presence of genuine issues of material fact.

In reviewing the motion at bar, this Court has meticulously examined the parties' 56.1 statements, the disability Plan, as well as the numerous medical reports, plan documents, and inter-party correspondence contained in the nearly 7,000 page claim file. Based on this review, this Court is satisfied that Defendants' decision to deny LTD benefits was not arbitrary and capricious or an abuse of discretion, but rather was reasonable and supported by substantial evidence. Because Plaintiff fails to raise a genuine issue of material fact, this Court will grant Defendants' motion for summary judgment on both the claim for denial of benefits under ERISA 502(a)(1)(B) and for breach of fiduciary duty under ERISA § 502(a).

### a. The Committee's Denial of LTD Benefits was Reasonable and Supported by Substantial Evidence

Based on the administrative record following the two remand reviews, this Court is satisfied that Defendants have reasonably relied on substantial evidence to support their determination that Plaintiff was not disabled from performing the essential duties of his position. Following Defendants' voluntary remand, Plaintiff did not submit additional medical

documentation to demonstrate the ongoing nature of his disability, but he did take issue with the Committee's characterization of the job requirements. To address this concern, the Committee: 1) obtained the ODA based on Plaintiff's former colleague Edio Zampaglione; 2) received a medical review from orthopedic surgeon Dr. Agnew; and 3) obtained an independent vocational review from Horizon, which determined that Plaintiff was not "totally disabled" from performing either this sedentary job or any position for which Plaintiff is or could become qualified by education, training, or experience.

Following Plaintiff's submission of medical reports from Dr. Arena and Ms. Mocarski subsequent to the second remand, the Committee solicited two further medical reports, in order to determine whether Plaintiff could meet the essential travel requirements of his former position. In the first report, Dr. Agnew reviewed the 2016 ODA, in which Mr. Zampaglione noted that the position required up to 20% of "very flexible" "domestic" travel, as well as the vocational rehabilitation assessment from Ms. Mocarski. Dr. Agnew concluded that even if both reports accurately characterized the physical and environment job requirements, Plaintiff would nevertheless not be disabled from such position from February 1, 2013 to June 5, 2014. CF 5346.

Subsequent to the second remand, Defendants also solicited an independent physician review from orthopedic surgeon Dr. Thomas, who thoroughly reviewed Plaintiff's treatment history, including an examination of Dr. Vega's IME hip exam, the notes from rheumatologist Dr. Golombek, the metal ion testing and prosthesis evaluation from orthopedist Dr. Colizza, orthopedic surgeon Dr. Bouillon's notes, and Dr. Park's SSA review. In evaluating all of this medical evidence—and proceeding from the same assumption that Ms. Mocarski and Mr. Zampglione accurately characterized the exertional requirements of the position—Dr. Thomas similarly concluded that Plaintiff was not disabled from performing his job. In view of the

13

substantial medical evidence examined by the Committee and its reviewing physicians, this Court is satisfied that Defendants did not abuse their discretion or act in an arbitrary and capricious manner when they denied Plaintiff LTD benefits.

### b. Plaintiff Has Not Raised a Genuine Issue of Material Fact

Not only have Defendants adequately demonstrated that the denial of LTD benefits was reasonable and supported by substantial evidence, Plaintiff has failed to indicate that there are genuine issues of material fact that preclude summary judgment. In short, Plaintiff's arguments are either unsupported by the record or fail to rebut or discredit the substantial evidence that underlies Defendants' decision.

i. The Operative Disability Plan Has Not Changed During the Course of Litigation

In his moving papers, Plaintiff argues, for the first time in this litigation, that the "Plan ('2014 Plan') presented here is not the Plan that was in effect during the Plaintiff's disability case" (Pl. SUMF ¶ 2) and that this '2014 Plan' "did not appear in any of the Remands . . . was not part of the original Administrative Record, did not exist in 2012 and furthermore *was not available for or known to the administrators for review at the time Plaintiff's claim was made, evaluated and processed*." Docket No. 74, 18 (emphasis in original); see also id. 5 ("The first and foremost issue in this case has been the preparation, construction, alteration and subsequent manipulation of the original Administrative Record and Case File."); Pl. SUMF ¶ 18 (Defendants "covertly and surreptiously added a never before seen, newly written 2014 Plan Document").

In light of the serious nature of this allegation, this Court has scrupulously reviewed the administrative record, including the Plan as appended to Plaintiff's May 16, 2014 complaint (Docket No. 1-1, "Compl.," Ex. A); the plan as produced to Plaintiff on January 6, 2015 pursuant to Defendants' discovery disclosures under Rule 26(a)(1) (Docket No. 91-3, Reply Ex. 1); the

Plan as produced to Plaintiff on April 1, 2015 in response to Plaintiff's discovery request for a copy of the "Summary of my LTD benefits" (Docket No. 91-4, Reply Ex. 2); and the plan as presented in Defendants' motion at bar (Docket No. 71-5, Ex. A).

Having conducted this review, this Court is satisfied that Defendants have not, as Plaintiff argues, "covertly and surreptiously added" a previously undisclosed Plan. Instead, Plaintiff's May 2014 complaint appears to append an incomplete version of the Plan, in which the document ends mid-sentence on page 29 ("The Savings & Retirement Plan – a plan intended to qualify under Section 401(a) and 401(k) of the Internal . . ."). Plaintiff's incomplete version attached to the complaint omits the subsequent pages that complete the sentence and detail the terms and conditions for LTD benefits eligibility. As Defendants produced to Plaintiff a full and complete copy of the Plan on numerous occasions during the administrative review process, Plaintiff's argument is unsupported by the record and accordingly fails to raise any genuine issues of material fact.

  ii. <u>Defendants Have Not Impermissibly Reclassified Plaintiff's Job Requirements in Order to Deny LTD Benefits</u>

Plaintiff argues that "An egregious action by the Defendants was to reclassify the Plaintiff's job duties from light to medium with travel to an entirely new description of sedentary activity level of exertion for his job duties." Docket No. 74, 8. As evidence that Defendants initially classified the job duties as "light to medium," Plaintiff cites two Bayer human resource documents in the claim file, which both indicate "light to medium with travel" under the subsection header "Job Description/Occupation/DOT." CF 252; 230. The job description to which Plaintiff cites, however, further notes that there was "no job description yet on file; requested." Such documents provide an insufficient basis to substantiate Plaintiff's argument that

Defendants reclassified his job duties from "light to medium" to sedentary, as the quoted documents themselves indicate that there was "no job description on file."

Even if this Court accepted Plaintiff's argument, such reclassification would not be dispositive because the entire issue is ancillary to this Court's primary review. Namely, this Court's task is not to assess whether Defendants accurately labeled the job requirements, but rather whether Defendants determined—reasonably and supported by substantial evidence—that Plaintiff was "unable to perform the essential duties of [his] regular occupation." Plan Doc. 125. To make that determination, both Dr. Agnew and Dr. Thomas based their review on the job description from Plaintiff's own expert's as well as the 20% travel requirement from Mr. Zampaglione's ODA. Based on such an assumption, both doctors found that Plaintiff was not precluded from performing his job duties. Further, Plaintiff has provided no objective medical evidence to contradict the medical determination that he is capable of meeting such travel demands. Accordingly, this Court is satisfied that Defendants did not abuse their discretion by determining that Plaintiff could satisfy the travel requirements of his position.

> iii.   The Termination of LTD Benefits Was Not Impermissibly Based on Bias or Conflict of Interest

In his opposition papers, Plaintiff argues that Defendants' review process was compromised by structural conflicts of interest, because the Plan is "primarily funded by Bayer Corporation's general assets and Bayer Corporation has sole discretion to award or deny LTD benefits." Docket No. 74, 34. Plaintiff further argues that the independent medical reviews Defendants obtained before denying the LTD benefits were similarly compromised by bias or conflicts of interest. See, e.g., Pl. SUMF ¶ 22 ("Funny that coincidently and surreptitiously, all three experts, used the same wording — lacking objective medical evidence . . . [i]t begs the

question as to whether they [sic] prompted or scripted – instructed before hand. . .. Were they instructed on how to present their findings?").

As previously noted, subsequent to the Supreme Court's ruling in Glenn, courts in the Third Circuit do not apply a heightened level of scrutiny regarding alleged conflicts of interest and the denial of benefits under ERISA. Rather, the same deferential standard of arbitrary and capricious applies, and any bias constitutes just "one of several factors in considering whether the administrator or the fiduciary abused its discretion." Schwing, 5623 F.3d at 525. Beyond the bald assertion that the decision was compromised by bias, Plaintiff has identified no evidence— within the administrative record or outside of it, pursuant to Howley—that indicates that the benefits denial was, in fact, "was motivated or affected by the administrator's conflict." Metro Life, 554 U.S. at 120. While Bayer may primarily fund the Plan, such funding is not dispositive of an abuse of discretion. Further, the similar wording employed by the medical experts, noting the lack of "objective medical evidence" supporting a continued disability, does not indicate bias because such language represents the standard by which Defendant may cease to provide LTD benefits under the Plan. Plan Doc. 122 ("Benefits will stop automatically if you: . . . Do not provide satisfactory objective medical evidence of your continuing disability by the date required."). Accordingly, this Court will not deny Defendants motion for summary judgment on the basis that decision to terminate LTD benefits was compromised by conflicts of interest.

    iv.  Plaintiff's Other Arguments Fail to Raise a Genuine Issue of Material Fact

Plaintiff advances other arguments for why summary judgment is not appropriate. Having reviewed the moving papers and the administrative record, this Court is satisfied that such arguments do not give rise to genuine issues of material fact.

Plaintiff argues that "Defendants never define, describe, qualify or quantify anywhere in the Disability Plan plain language what they consider as 'Objective Medical Evidence.'" Pl. SUMF ¶ 6. However, the Plan specifically provides that the provision of such OME is determined by "the company or its delegate in its sole discretion" (Plan Doc. 130), so the failure to define OME does not render the decision arbitrary and capricious under Firestone Tire. While the administrative record contains medical write-ups from the period June to December 2012 from Dr. Orlandoni (PCP), Dr. Golombek (rheumatologist), Dr. Bouillon (orthopedic surgeon) and Dr. Colizza (orthopedist), Plaintiff has not supplemented the administrative record during the appeal and two remands with any updated medical records from these providers to document any ongoing medical disability. As such, it is not the case that Defendants have received and subsequently rejected Plaintiff's medical evidence for being insufficiently "objective"; instead, Plaintiff has wholly failed to provide any medical evidence from these providers to confirm that he continued to receive medical treatment after December 2012. As stated in the Plan, LTD benefits "will stop automatically if you: . . . are no longer under the regular care of a physician whose specialty or experience is appropriate for your condition." Plan Doc. 122.

Plaintiff argues that the Committee acted arbitrarily and capriciously because they failed to rebut the medical opinions advanced by Plaintiff's medical experts. See, e.g., Pl. SUMF ¶ 19 ("A reasonable factfinder would conclude that Ms. Mocarski's expert report . . . most accurately represent the Plaintiff's true job duties."). This argument misstates the relevant standard for this Court's review of the denial of benefits under ERISA. This Court must uphold the Committee's determination if it was reasonable and supported by substantial evidence. If such evidentiary support exists, it is not dispositive that Plaintiff's expert offers an opposing medical opinion, as plan administrators as not obligated to defer to the medical opinions of Plaintiff's physicians and

experts. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003); Stratton v. E.I.

DuPont De Nemours & Co., 363 F.3d 250, 258 (3d Cir. 2004) ("A professional disagreement

[between the parties' medical experts] does not amount to an arbitrary refusal to credit.").

At numerous points in his motion, Plaintiff contends that Defendants are conspiring to

withhold relevant information. See, e.g., Pl. SUMF ¶ 13 ("An ongoing genuine issue and

material fact in dispute in this case is the Defendants' recalcitrant efforts to withhold information

in their possession."); id. ¶ 18 ("Defendants manipulate and delete important information that

counters their position")); id. ¶ 22 ("Plaintiff truly and strongly believes that the Defendants are

still withholding materials."). Beyond the bald assertion of wrongdoing, Plaintiff provides no

evidence—and this Court finds none—that Defendants are "manipulating and deleting"

information in their position or purposely withholding relevant materials. While Plaintiff cites

various records that Defendants produced subsequent to the first remand, such remand was

voluntary at the request of Defendants, to allow for "completion of the evidentiary record and

review of the full record." Docket No. 35, 2. Further, Plaintiff provides no case law authority for

the proposition that this Court should draw adverse inferences against Defendants on the basis of

that additional documents were produced following remand. This Court is satisfied that

Defendants supported their denial of LTD benefits with substantial evidence, based on the

administrative record as supplemented by the evidence produced following the two remand

reviews. As such, Plaintiff's argument does not present a genuine issue of material fact.

### c. Equitable Relief Under ERISA § 502(a) is Not Appropriate

In addition to a claim for denial of benefits under ERISA § 502(a)(1)(B), Plaintiff also

asserts a claim for breach of fiduciary duty under ERISA § 502(a). Compl., 2. Section 502(a)(3)

creates an equitable remedy for ERISA plan beneficiaries "A) to enjoin any act or practice which

violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Such equitable relief is not appropriate, however, where the Plaintiff otherwise has an adequate remedy under other provisions of Section 502. Varity Corp. v. Howe, 516 U.S. 489, 490 (1996) ("In fact, § 502's structure suggests that Congress intended the general "catchall" provisions of subsections (3) and (5) to act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.") (emphasis added); Ream v. Frey, 107 F.3d 147, 152 (3d Cir.1997) ("Where Congress otherwise has provided for appropriate relief for the injury suffered by a beneficiary, further equitable relief ought not be provided."); Precopio v. Bankers Life & Cas. Co., 2004 WL 5284512, at *31 (D.N.J. Aug. 10, 2004) ("[U]nder Varity and Ream, where a participant or beneficiary seeks a remedy that is otherwise recoverable under other provisions of Section 502, the individual cannot also seek that same remedy via a breach of fiduciary duty claim under Section 502(a)(3)(B)'s catchall provision.").

In his complaint, Plaintiff alleges that Defendants breached their fiduciary duty by, among other things, "fail[ing] to perform their administrative duties," failing "to provide [Plaintiff's] plan benefits in accordance with the plan," "through purported conflicts of interest," and by "ignoring" the medical opinions of certain physicians. Compl. ¶¶ 4, 10-12, 14-15, 17, 21. The complaint indicates that the alleged breach of fiduciary duty consisted of the denial of LTD benefits. Compl. ¶ 24 ("I suffered cognizable losses as a result of Bayer Corporation's breach of their fiduciary duty. As a result of Bayer Corporation's actions, I was denied my LTD benefits."). Plaintiff has an adequate remedy to address such injury, namely the first cause of action for denial of benefits under ERISA Section 502(a)(1)(B). Because the equitable catchall provision in

20

Section 502(a)(3) is not appropriate for injuries otherwise recoverable under other provisions of Section 502, this Court will grant Defendants motion for summary judgment on this claim.

**IV.     CONCLUSION**

For the forgoing reasons, this Court will grant Defendants' motion for summary judgment and this Court will dismiss with prejudice both Plaintiff's claim for denial of benefits under § 502(a)(1)(B) as well as Plaintiff's claim for breach of fiduciary duty under ERISA § 502(a). An appropriate Order accompanies this Opinion.

        /s Stanley R. Chesler
        STANLEY R. CHESLER
        United States District Judge